David P. Myers (SBN 206137)
dmyers@myerslawgroup.com
Robert M. Kitson (SBN 214091)
rkitson@myerslawgroup.com
Jason Hatcher (SBN 285481)
jhatcher@myerslawgroup.com
**THE MYERS LAW GROUP, A.P.C.**
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 919-2027
Facsimile: (888) 375-2102

Attorneys for Plaintiff Kellen Shaw, and all others similarly situated

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATASHA AYALA, as an individual and as a representative party under the California Private Attorney General Act (PAGA); KELLEN SHAW, as an individual and as proposed class representative under Fed. R. Civ. Proc. 23; <br><br> Plaintiffs, <br><br> vs. <br><br> AT&T MOBILITY SERVICES, LLC, a Delaware Limited Liability Company; and Does 1 through 100, inclusive, <br><br> Defendants. | Case No.: 2:18-cv-08809-FLA-MRW <br><br> *Hon. Fernando L. Aenlle-Rocha* <br><br> CLASS ACTION <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:  October 13, 2023 <br> Time:  1:30 P.M. <br> Courtroom: 6B <br><br> Complaint filed: Aug. 22, 2018 <br> Removed: Oct. 12, 2018 |

i

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at 1:30 p.m. on October 13, 2023, before the Honorable Fernando L. Aenlle-Rocha, United States District Judge, in Courtroom 6B of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, Plaintiff Kellen Shaw ("Plaintiff") will move this Court for an Order Granting Final Approval of the settlement of this putative class action. Good cause exists for the granting of this Motion in that the proposed settlement is fair, reasonable, and adequate.

The Motion will be based on this Notice of Motion and Motion, Memorandum of Points and Authorities, the Declaration of Attorney Jason Hatcher, Plaintiff Kellen Shaw, Declaration from Bryn Bridley (agent of Third-Party Settlement Administrator, Atticus Administration), the concurrently filed Motion for Class Counsel Fees, Cost Reimbursement, and Service Payment, Plaintiff's Motion for Preliminary Approval (including supporting documents) and on such oral and documentary evidence as may be presented before or at the hearing of the Motion.

DATED:  September 15, 2023         Respectfully submitted,
**THE MYERS LAW GROUP, A.P.C.**


By:   /s/Jason Hatcher
        David P. Myers,
        Robert M. Kitson,
        Jason Hatcher,
        Attorneys for Plaintiff Shaw and all
        others similarly situated.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................... 1

II.   CASE HISTORY AND OVERVIEW ................................ 2

  A.  FACTUAL AND PROCEDURAL BACKGROUND ................... 2

  B.  PRELIMINARY APPROVAL AND SETTLEMENT NOTICE ........ 5

III.  SUMMARY OF THE PROPOSED SETTLEMENT ................ 6

  A.  The Settlement Class .................................................... 6

  B.  The Settlement Allocations ............................................. 6

    1.  Individual Settlement Class Member Payments ................. 7

    2.  Notices to the Settlement Class .................................... 7

    3.  Narrowly Tailored Release of Claims ............................ 8

IV.   COURT SHOULD CONFIRM CLASS CERTIFICATION .......... 9

V.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE .......... 9

  A.  The Law Favors Settlement in Class Actions ..................... 9

  B.  Proper Notice Has Been Provided ................................... 9

    1.  Notice of Settlement Made Pursuant to Court's Order ........ 9

    2.  NO Settlement Class Member Objections ....................... 10

  C.  The Settlement is Fair, Reasonable and Adequate ............... 10

    1.  No Objections or Opt-Outs Since the Court's Preliminary Approval that Settlement is Fair, Reasonable and Adequate ............................................. 11

    2.  The Strength of Plaintiff's Case Favors Final Approval ....... 12

    3.  Costs, Risks, and Delay Favor this Settlement Agreement ...... 13

    4.  Risk of Maintaining Class Action Favors Final Approval ...... 14

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

5.  The Amount Offered in Settlement Favors Final Approval.......................15

   a) Significant Value for Class Claims Achieved.............................16

   b) Significant Payments.....................................................16

   c) Non-collusive, Arm's Length Negotiations .............................16

6.  The Extent of Discovery Completed and Stage of Proceedings Favors Final Approval .................................................................17

7.  Experience and Views of Counsel favors Final Approval ........................18

8.  Presence of Government Participant Favors Final Approval....................19

9.  The Class Members' Reaction Favors Final Approval ..............................19

**VI. CONCLUSION.......................................................................20**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arnold v. Fitflop USA, LLC,*
2014 WL 1670133, *8 (S.D. Cal. Apr. 28, 2014) ..................................................... 19

*Augustus v. ABM Security Services, Inc.*
(2016) 2 Cal.5th 257 ................................................................................................ 14

*Bell v. Home Depot U.S.A., Inc.*
(E.D.Cal. Apr. 10, 2017, No. 2:12-cv-02499 JAM-CKD) 2017 U.S.Dist.LEXIS
55442 ....................................................................................................................... 14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, (9th Cir. 1992) ............................. 9

*Couser v. Comenity Bank,*
125 F. Supp. 3d 1034, (S.D. Cal. 2015) .................................................................. 12

*Dyer v. Wells Fargo Bank, N.A.,*
303 F.R.D. 326, (N.D. Cal. 2014) ........................................................................... 13

*Ferra v. Lowes Hollywood Hotel, LLC,*
40 Cal. App. 5th 1239 ........................................................................................... 3, 4

*Garner v. State Farm. Mut. Auto Ins. Co.,*
2010 U.S. Dist. LEXIS 49477, *35, 2010 WL 1687832, *13 (N.D. Cal. April 22,
2010) ....................................................................................................................... 12

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011, (9th Cir. 1998) ......................................................................... 11, 17

*Judson v. Goldco Direct, LLC*
(C.D. Cal. June 11, 2021) 2021 U.S.Dist.LEXIS 258173, *11 ............................... 15

*Martinez,* 2021 U.S.Dist.LEXIS 260359, at *9 ................................................... passim

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,*
221 F.R.D. 523, (C.D. Cal. 2004) ........................................................................... 12

v

*Officers for Justice v. Civil Service Com.*
  (9th Cir. 1982) 688 F.2d 615 ........................................................ 13, 15, 17
*Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.),*
  516 F.3d 1095, (9th Cir. 2008) ............................................................... 9
*Rodriguez v. West Publishing Corp.,*
  563 F.3d 948 (9th Cir. 2009) ................................................................ 16
*Rodriguez v. West Publishing Corp.,*
  563 F.3d 948, (9th Cir. 2009) ................................................... 11, 12, 17
*Sypherd v. Lazy Dog Rests., LLC*
  (C.D.Cal. Feb. 10, 2023, No. 5:20-cv-00921-FLA (KKx)) 2023 U.S.Dist.LEXIS 23257, *7 ................................................................ 9, 10, 11
*Walker v. Life Ins. Co*
  (C.D. Cal. June 7, 2021) 2021 U.S.DistLEXIS 252938, *18................... 9
*Willner v. Manpower Inc.,*
  No. 11-CV-02846-JST, 2015 WL 3863625, *3 (N.D. Cal. June 22, 2015)........... 15
*Young v. Polo Retail, LLC,*
  No. C 02-4546 VRW, 2007 WL 951821, *4 (N.D. Cal. Mar. 28, 2007).............. 18

**Statutes**

Cal. Bus. & Prof. Code §§17200, et seq. ...................................................... 3
Fed. R. Civ. Proc. 23 ..................................................................... passim
Labor Code §§ 512, 226.7 and Wage Order 4 ........................................... 3, 4
Labor Code §§201 and 202, et seq.............................................................. 3
Labor Code §§2698, et seq. ...................................................................... 3
Labor Code §§510, 1194............................................................................ 3, 4
Labor Code §226(a) ................................................................................... 3

## I. __INTRODUCTION__

Plaintiff Kellen Shaw ("Plaintiff" or "Class Representative") seeks final approval of the proposed Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") that was Preliminarily Approved by this Court on June 20, 2023. [Dkt. 81]; [Dkt. 73-3].[1]

The proposed Settlement is a ***non-reversionary***, Gross Settlement Amount ("GSA") of ***One Hundred and Fifty Thousand Dollars and Zero Cents (\$150,000.00)*** to be paid by Defendant AT&T Mobility Services, LLC. ("Defendant") in exchange for a release of claims that are narrowly tailored to the facts and claims asserted in the instant action. *See* [Dkt. 73-3. at ¶¶ 2, 4, 5, 37, 38].

***No Class Member opted-out of the Settlement or objected to the terms of the Settlement,*** after the settlement notices were mailed and the 30 day notice period expired. (Decl. Bridley at ¶¶ 11).

The Class Settlement applies to approximately 489 individual participating class members and approximately only 14,892 workweeks for the Covered Period of August 22, 2014 to July 31, 2015 – the Covered Period represents a potential maximum of 49 workweeks for any individual settlement class member.[2]

This yields an estimated workweek value of approximately \$5.07 [\$75,500 / 14,892]. As a gauge, this workweek value is almost double the value of the \$2.37 workweek value in the *Wallack* settlement. [Dkt. 74-5, Ex. E at ECF p. 12:27-28].

As a further gauge, this yields an "average" class member payment of ***\$154.40*** (\$75,500 / 489), subject to the *pro rata* calculation for settlement class members' individual payment.

It is estimated that approximately 63% of the Settlement Class (approx. 309

---

[1] This Motion incorporates by reference the definitions in the Settlement Agreement. All defined terms contained herein shall have the same meaning as set forth in the Settlement Agreement.

[2] Pursuant to Footnote 2 in the Motion for Preliminary Approval, the estimated 20,580 workweeks in the Motion for Preliminary Approval was high and based on applying the maximum number of workweeks for the estimated Settlement Class Size. Accordingly, even though the actual class size is more than previously estimated, the workweeks are far less, yielding a higher workweek value. *See* [Dkt. 73-1 at p. 8, Fn. 2].

individuals) will receive class settlement payments *in excess of $100.00* for a very limited Covered Period.  (Decl. Hatcher ¶ 18).

This is a <u>significant recovery.</u> Plaintiff and Class Counsel believe that the proposed settlement is fair, reasonable, and adequate given the known facts and circumstances. (Decl. Hatcher ¶¶ 19, 20); (Decl. Shaw ¶¶ 10, 15).

Accordingly, based on this Motion (including any supporting documentation) and in the papers previously submitted in support of approval, Plaintiff Shaw respectfully requests that this Court grant final approval of the proposed settlement; conforms the appointment of (1) Atticus Administration ("Atticus" or the "Settlement Administrator") as the Settlement Administrator; (2) Kellen Shaw, the Named Plaintiff, as the Settlement Class Representative; (3) David P. Myers, Robert M. Kitson, and Jason Hatcher of The Myers Law Group, A.P.C. as Class Counsel for the Settlement Class; and   enter (4) judgement in accordance with the terms of the Settlement Agreement.

## II.  <u>CASE HISTORY AND OVERVIEW</u>

### A.  FACTUAL AND PROCEDURAL BACKGROUND

On August 22, 2018, Plaintiff Natasha Ayala ("Ayala") filed a class action complaint in the Superior Court for the State of California, County of Los Angeles which alleges violations of California Labor Code and B&PC claims: (1) Failure to Pay Overtime Wages; (2) Failure to Provide Rest Periods; (3) Failure to Pay Wages Due at Separation; (4) Failure to Provide Accurate Wage Statements; and (5) Unfair Competition. *See* [Dkt. 1-2, Ex. 3].

On October 15, 2018, Defendant removed the action to the Central District of California under the Class Action Fairness Act ("CAFA"). [Dkt. 1].  On December 10, 2018, Ayala filed a First Amended Complaint, adding a Private Attorneys General Act cause of action. [Dkt. 14].

On April 1, 2019, Ayala filed a Motion for Class Certification and Motion for Leave to file a Second Amended Complaint ("SAC"). [Dkts. 28 and 30]. On April 25,

2

2019, the Court granted Ayala leave to file the SAC and ordered a renewed Motion for Class Certification be filed. [Dkt. 37]. On April 29, 2019, Ayala filed the SAC, adding a cause of action for violation of Labor Code §§ 512, 226.7 and Wage Order 4. [Dkt. 38].

On June 3, 2019, Ayala filed her Renewed Motion for Class Certification. [Dkt. 40]. On September 25, 2019, the Court denied Ayala's Renewed Motion for Class Certification after it found Ayala was not an adequate class representative and that her claims were not typical of the putative class. [Dkt. 51]. The court did not reach any conclusions regarding the requirements of Rule 23(b). *Id.* at p.8. In its order, the Court provided Ayala leave to amend to add a new class representative. *Id.*

On October 16, 2019, Ayala filed a Third Amended Complaint ("TAC"), replacing Ayala with Plaintiff Kellen Shaw as the proposed Rule 23 class representative and leaving Ayala as the PAGA representative. [Dkt. 52].

In the TAC, Plaintiff asserts the following claims: (1) violation of Labor Code §§510, 1194 (overtime), (2) violation of Labor Code §226.7 (rest periods), (3) violation of Labor Code §226(a) (wage statements), (4) violations of Labor Code §§201 and 202, et seq. (waiting time penalties), (5) violation of Cal. Bus. & Prof. Code §§17200, et seq., (6) violation of the Private Attorneys General Act ("PAGA"), Labor Code §§2698, et seq.; and (7) Violation of Labor Code §§ 512, 226.7 and Wage Order 4. [Dkt. 52].

Following the filing of the TAC, in light of multiple pending California Supreme Court matters based on Court of Appeal decisions that impacted the claims at issue in this action, and the lack of finality of said decisions, the parties jointly stipulated, and the Court ordered, that Plaintiff be provided leave to amend to file a Fourth Amended Complaint seven (7) days after the *Ferra v. Lowes Hollywood Hotel, LLC*, 40 Cal. App. 5th 1239, decision became final and that Defendant be provided 14 days after service of the Fourth Amended Complaint to file its response. [Dkts. 53, 54].

On July 15, 2021, the California Supreme Court issued a decision in *Ferra* ruling that the phrase "regular rate of compensation" under Labor Code §226.7 to be synonymous to "regular rate of pay" as used in Labor Code §510(a). *See Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 864 (2021).

Between October 2019 and July 2021, this Action was at a stand-still due to the California Supreme Court's review of *Ferra*. One week after the California Supreme court issued its decision in *Ferra*, Defendant provided notice of four other related cases, including *Wallack, et al. v. AT&T Mobility Services, LLC* (San Bernardino Superior Court Case No. CIVSB2117915), filed June 22, 2021, then pending in San Bernardino Superior Court, Case No. CIVSB2217915 ("*Wallack*"). [Dkt. 58].

On August 11, 2021, the plaintiffs in the *Wallack* Action filed a Motion for Preliminary Approval of Class Action Settlement. [Dkt. 74-2, Ex. B].

On September 29, 2021, Defendant filed its Motion to Dismiss the Third Amended Complaint. [Dkt. 62]. Plaintiff opposed Defendant's Motion to Dismiss and the matter was taken under submission on November 8, 2021.

On November 2, 2021, preliminary approval was granted in the *Wallack* Action. [Dkt. 74-3, Ex. C at 2:9]. The mediation in the *Wallack* matter took place on March 29, 2021. [Dkt. 74-1, Ex.–A - *Wallack* Settlement at ¶16]. The *Wallack* settlement entails a larger settlement class, which overlaps and subsumes the putative class in this matter, for the period of time from August 1, 2015 to November 2, 2021. [Id. at ¶¶ 2, 4]; [Dkt. 74-4, Ex. D]; [Dkt. 74-2, Ex. B at 14:3-7].

Plaintiff Shaw and Plaintiff Ayala unsuccessfully attempted to intervene in the *Wallack* matter. [Dkt. 74-4, Ex. D at Fn. 1]. The *Wallack* Settlement was modified at the preliminary approval hearing to add Plaintiff Shaw and Plaintiff Ayala as class members, both of whom subsequently opted-out of the *Wallack* Settlement.

On February 4, 2022, Plaintiff and AT&T submitted a Notice of Settlement to this Court advising the Court of a settlement in principle reached between the parties covering claims at-issue in this matter for the period of time preceding the *Wallack*

4

Settlement. [Dkt. 67]. On February 22, 2022, the Court denied Defendant's Motion to Dismiss as moot. [Dkt. 68].

Plaintiff Shaw and Class Counsel conducted sufficient discovery and investigation to prepare for class certification and trial in this action. This includes, but is not necessarily limited to, obtaining responses to two sets of Request for Production of Documents; two sets of Interrogatories; conducting two separate depositions of Defendant's Rule 30(b)(6) deponents; obtaining over a thousand pages of documents from Defendant; and timekeeping and payroll records. [Dkt. 73-2 at ¶10].

Accordingly, through this extensive discovery and motion practice in this action, Class Counsel were well positioned to evaluate the strengths and vulnerabilities of the claims and to engage in settlement discussions that eventually led to this settlement. It is based on the substantial efforts, investigation, and collaboration of Class Counsel and Plaintiff that the instant settlement was reached. [Id. at ¶¶ 9-16].

## B.    PRELIMINARY APPROVAL AND SETTLEMENT NOTICE

After the Settlement was fully executed in this case, Plaintiff filed her Motion for Preliminary Approval on May 31, 2022. [Dkt. 73-1]

On June 20, 2023, this Court granted Preliminary Approval and conditionally certified the Settlement Class, appointing Plaintiff's counsel as Class Counsel and Plaintiff as Class Representative. [Dkt. 81].

On July 13, 2023, Atticus Administration sent the Settlement Notice via First Class Mail to the Settlement Class. (Decl. Bridley at ¶7). Of the 489 Notices, 21 were ultimately undeliverable prior to the response cutoff after Atticus Administration used a professional search firm to address trace 42 of the 49 returned notices. (Id. at ¶8). Atticus also set up a website at https://www.shawattsettlement.com/. *See also* (Decl. Bridley at ¶ 9 and Ex. A at pg. 2) (Bridley's declaration by mistake lists the address as www.shawsettlement.com).

As of the August 12, 2023 deadline, there are **<u>ZERO</u>** objections, **<u>ZERO</u>** opt-outs from the Settlement. (Decl. Bridley at 11).

## III. <u>SUMMARY OF THE PROPOSED SETTLEMENT</u>

The terms of the settlement are set forth in the Settlement Agreement. [Dkt. 73-3]; [Dkt. 73-3 at ¶ 66].

### A.   **The Settlement Class**

The Settlement Class consists of:

All current and former hourly non-exempt employees who worked for AT&T Mobility Services LLC at any call center in the State of California at any time from *August 22, 2014, to July 31, 2015*, and received commission payments.[3] [Dkt. 73-3 at ¶2].

This is consistent with the Court's conditional certification order.

### B.   **The Settlement Allocations**

The Settlement provides a non-reversionary Gross Settlement Amount ("GSA") of ***$150,000.00*** [Dkt. 73-3 at ¶29]. This GSA includes all Individual Settlement Class Member Payments, Settlement Administration Costs, Class Counsel Litigation Expenses, Class Counsel Fees, and Plaintiff's Enhancement Award. [Id. at ¶¶ 29-33].

| | |
|---|---|
| **Gross Settlement Amount** | $150,000.00 |
| Class Counsel Fees | $50,000.00 |
| Class Counsel Litigation Expenses | $7,500.00 |
| Settlement Administration Costs | $12,000.00 |
| Plaintiff Shaw Service Award | $5,000.00 |
| **Net Settlement Amount** | $75,500.00 |
| | |
| **Class Portion of the Settlement** | |
| Number of Participating Class Members | 489 |
| Number of Objections | 0 |
| Number of Opt-Outs | 0 |
| Average Class Member Payment | $154.40 |
| Estimated Number of Payments over $100.00 | 309 |

---

[3] Excluded from the Class definition is Natasha Ayala given her settlement of all of her individual claims.

| Estimated Number of Payments at $253.82 | 195 |
| --- | --- |

[Dkt. 73-3]; (Decl. Bridley at ¶¶ 7, 11); (Decl. Hatcher at ¶ 18). In addition to the GSA, Defendant will pay the employer-side of payroll taxes arising from any portion of the settlement shares attributable to wages. [Dkt. 73-3 at ¶ 29].

## 1. Individual Settlement Class Member Payments

The individual participating settlement class member payments are the product of a *pro rata* share of the NSA based on the number of weeks the settlement class member worked during the Covered Period. [Dkt. 73-3 at ¶ 33]. The "average" settlement share is $154.40 and the estimated highest payment is $253.82. (Decl. Bridley at ¶ 5). It is estimated that there are 195 Settlement Class Members (approximately 40% of the Settlement Class) that will receive the $253.82 payment.

## 2. Notices to the Settlement Class

In accordance with the Settlement Agreement, and this Court's Order Granting Preliminary Approval of the Settlement, Class Members were mailed a Notice of Settlement that included, but was not limited to, information regarding the nature of the litigation; a summary of the terms of the Settlement Agreement; the definitions of the Settlement Class; the projected cost for administration of the settlement; information regarding payments from the GSA; the Settlement Class Member's estimated Class Member Payment; the formula for calculating the Class Member Payment; the dates of the Class Period; instructions for requesting exclusion from or objecting to the settlement, as well as the deadlines by which Settlement Class Members must postmark such requests or objections; the date, time and location of the Final Approval/Fairness Hearing; and the claims to be released by the Settlement Class Member. (Decl. Bridley at Ex. A).

On July 13, 2023, Atticus Administration sent the Settlement Notice via First Class Mail to the Settlement Class. (Decl. Bridley at ¶7)[4]. Of the 489 Notices, 21 were

---

[4] There were a couple changes to the notice that were required to ensure the same conformed with the terms of the Settlement Agreement.

ultimately undeliverable prior to the response cutoff after Atticus Administration used a professional search firm to trace that address of 42 of the 49 initially returned notices. (Id. at ¶8).

### 3. Narrowly Tailored Release of Claims

Release of Class Claims by Class Members for the Covered Period of ***August 22, 2014 to July 31, 2015***:

> [T]he Class Members (other than those who timely and validly elected not to participate in the Settlement) fully release and discharge Defendant and the Released Parties of any and all known and unknown Covered Claims as alleged in, and that could have been reasonably alleged based on the facts of, the operative Third Amended Complaint, for the Covered Period. This includes, but is not limited to, statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs or expenses, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, arising out of or based upon any provision of the California Labor Code, California Industrial Welfare Commission Wage Orders, and California Business and Professions Code § 17200, *et seq.;* including, without limitation, the following categories of allegations, to the fullest extent such claims are releasable by law: (a) all claims for failure to pay wages, including overtime premium pay and the minimum wage; (b) all claims for the failure to provide meal and/or rest periods in accordance with applicable law, including payments equivalent to one hour of the employee's regular rate of pay for missed meal and/or rest periods and alleged non-payment of wages for meal periods worked and not taken; (c) all claims for the alleged omission of any kind of remuneration when calculating an employee's regular rate of pay; and (d) any and all claims for pay stub violations, claims for timely payment of wages and associated penalties, and all other non-PAGA civil and statutory penalties based on the Covered Claims. The Class Members understand and agree that this release includes a good-faith compromise of disputed wage claims. This release does not apply to or cover the Non-Covered Claims or the PAGA claim.

[Dkt. 73-3 at ¶37].

///

## IV. <u>COURT SHOULD CONFIRM CLASS CERTIFICATION</u>

The Court's Order granting preliminary approval on June 20, 2023, found that the Class meets all the requirements for class certification for settlement purposes. [Dkt. 81 at 5:8-8:8]. Since the Court entered an order granting preliminary approval, no events have occurred to cast doubt on the propriety of this determination. *Sypherd v. Lazy Dog Rests., LLC* (C.D.Cal. Feb. 10, 2023, No. 5:20-cv-00921-FLA (KKx)) 2023 U.S.Dist.LEXIS 23257, at *7; *see also Walker v. Life Ins. Co* (C.D. Cal. June 7, 2021) 2021 U.S.DistLEXIS 252938, at * 18. Following dissemination of the Settlement Notice, **<u>ZERO</u>** Class Members have asserted an objection to the Settlement and **<u>ZERO</u>** Class Members have requested exclusion from the Settlement. (Decl. Bridley at ¶11). This Court should therefore confirm its conditional certification of the Class.

## V. <u>FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE</u>

### A. The Law Favors Settlement in Class Actions

Federal Rule of Civil Procedure 23 provides that a certified class action may only be settled "with the court's approval." Fed. R. Civ. Proc. 23(e). Whether to approve a class action is in the sound discretion of the trial judge." "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned. *Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### B. Proper Notice Has Been Provided

Excepting Rules 23(e)(1)(B) and 23(e)(5), the Court already preliminary approved the finding of the Rule 23(e) factors. *See* [Dkt. 81 at 8:9-11:7].

### 1. Notice of Settlement Made Pursuant to Court's Order

Rule 23(e)(1)(B) has been met as Atticus Administration provided the notice of settlement to the settlement class members at a 95.71% success rate, excepting the 21 undeliverable notices prior to the response deadline. (Decl. Bridley at ¶ 8); [Dkt. 81;

9

*Sypherd,* 2023 U.S.Dist.LEXIS 23257, at *10-11 (approving notice success rate of 95.88%).

### 2. <u>NO</u> Settlement Class Member Objections

Demonstrating a resounding endorsement of the Settlement, **ZERO** Settlement Class Members objected to the terms of the Settlement, and **ZERO** Settlement Class Members opted-out of the Settlement. (Decl. Bridley at ¶ 11). Accordingly, Rule 23(e)(5) has been met.

Based on the foregoing, the Court should reaffirm the Class Notice here has satisfied due process in that it fairly and adequately informed the Settlement Class of the nature of the action, the terms of the proposed Settlement, the effect of the action and the release of claims, their rights to make a claim or to exclude themselves, and their rights to object to the Settlement.

### C.    The Settlement is Fair, Reasonable and Adequate

Under Rule 23(e)(2) if the proposed settlement would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i)    the costs,  risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Sypherd v. Lazy Dog Rests., LLC* (C.D.Cal. Feb. 10, 2023, No. 5:20-cv-00921-FLA
(KKx)) 2023 U.S.Dist.LEXIS 23257, at *8-9; *citing* Fed. R. Civ. P. 23(e)(2).

Additionally, the Ninth Circuit outlined additional factors the court may
consider: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and
likely duration of further litigation; (3) the risk of maintaining class action status
throughout trial; (4) the amount offered in settlement; (5) the extent of discovery
completed and the stage of the proceedings; (6) the experience and views of counsel;
(7) the presence of a governmental participant; and (8) the reaction of the class
members to the proposed settlement. *Id.; citing See Rodriguez v. West Publishing
Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,
1026 (9th Cir. 1998).

### 1.    No Objections or Opt-Outs Since the Court's Preliminary Approval that Settlement is Fair, Reasonable and Adequate

Here, the Court granted preliminary approval after finding the "each of the Rule
23(e)(2) factors weigh[ed] in favor of approval". [Dkt. 81 at 11:6-7]. The Court's
conclusion is amply supported by the record, including the vigorous matter in which
this action was litigated and the complexity of the action given the *Wallack* Settlement,
the substantial risk for both parties continuing to trial, the straightforward and
effective method of relief of distribution. [Dkt. 81 at 8:22-11:7]. Indeed, this non-
reversionary settlement, balanced against the aforementioned factors, demonstrates
that the Settlement is exceptionally fair, adequate and reasonable, and that it was
reached in the absence of any collusion.

As such, the Court should affirm its prior determination that the Settlement is
fair, reasonable and adequate. *Sypherd,* 2023 U.S.Dist.LEXIS 23257, at *10
(affirming preliminary approval of Settlement as fair, reasonable and adequate at final
approval when there was a 95.88% notification rate and no objections or opt-outs as
these statistics indicate a favorable settlement to affirm the court's prior
determination.); *Garner v. State Farm. Mut. Auto Ins. Co.*, 2010 U.S. Dist. LEXIS

49477, *35, 2010 WL 1687832 at *13 (N.D. Cal. April 22, 2010); *see e.g.*, *Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution…"); *Nat'l Rural Telecom. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

### 2.    The Strength of Plaintiff's Case Favors Final Approval

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Martinez,* 2021 U.S.Dist.LEXIS 260359, at *9. Moreover, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1041 (S.D. Cal. 2015).

Plaintiff and Class Counsel secured a fair, reasonable, and adequate settlement for the Covered Period after the *Wallack* settlement effectively eliminated approximately ***86.9%*** of the relevant time period in this action—the time period of August 1, 2015 to November 2, 2021—and eradicated the PAGA cause of action. [Dkt. 74-1, Ex. A at ¶4]; [Dkt. 74-3, Ex. C]. Despite this, the *Shaw* Settlement yields a higher *pro rata* share payment for the Settlement Class than the *pro rata* share payment in the *Wallack* Settlement—compare $5.07 per workweek for the *Shaw* Settlement (NSA - $75,700 / 14,892 workweeks) compared to $2.85 in the *Wallack* settlement. [Dkt. 74-5, Ex. E at ECF p. 12:27-28]. This is an excellent result in light of the costs, risks, and delays of proceeding to trial.

It is estimated that approximately 63% of the Settlement Class (approx. 309 individuals) will receive class settlement payments ***in excess of $100.00*** for a very limited Covered Period.  And, it is estimated that there are 195 Settlement Class Members (approximately 40% of the Settlement Class) will receive the highest payment of $253.82. (Decl. Hatcher at ¶18).

Class Counsel's settlement negotiations acknowledged the post-*Wallack* Settlement landscape of the instant case, including the reduction in class size, relevant time period, claims at-issue, and the risks and strengths of the case thereafter; the

12

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

information and documents obtained through formal and informal settlement-based discovery; the common experiences of Plaintiff and the putative class members, Defendant's denial of wrongdoing and the risks, expense, uncertainty, and delay associated with bringing the action to trial, and to obtain class certification on a third attempt. [Dkt. 73-2 at ¶ 9].

In light of the claims at issue and the *Wallack* settlement, class members were still able to achieve significant recovery under the circumstances. [Dkt. 73-3 at ¶ 33]; [Dkt. 73-3, Ex. A, pg. 2]. This factor weighs in favor of final approval.

### 3.    Costs, Risks, and Delay Favor this Settlement Agreement

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *Martinez,* 2021 U.S.Dist.LEXIS 260359, at *9; *Officers for Justice v. Civil Service Com.* (9th Cir. 1982) 688 F.2d 615, 624.

The Settlement alleviates inevitable costs, high risks, and delays for an excellent and concrete resolution of $150,000.00 in a common fund settlement that is exclusive of employer-side payroll taxes. [Dkt. 73-2 at ¶¶ 9-16].

Proceeding in this litigation in the absence of settlement posed various risks such as losing a motion for class certification (again), at trial or on appeal. [Id.]. Notably here, there have been two fully briefed motions for class certification that were denied [Dkts. 28, 40], one successful motion for leave to amend [Dkt. 30], and one motion to dismiss that was mooted by the instant proposed settlement [Dkt. 62]. Further, the impact of the *Wallack* settlement cannot be understated. This is an excellent result in light of the costs, risks, and delays of proceeding to trial.

Thus, and because the Settlement Agreement eliminates the delay, costs, and uncertainty of further litigation, this factor supports final approval. *Martinez,* 2021 U.S.Dist.LEXIS 260359, at *10; *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing.").

13

### 4. Risk of Maintaining Class Action Favors Final Approval

This factor weighs in favor of approval because for the captive rest periods claims, there were significant risks that this claim would fail as a matter of law if the class was certified. Cases have held that merely requiring employees to remain on premise for rest periods, without more, does not establish a rest period violation. *Bell v. Home Depot U.S.A., Inc.* (E.D.Cal. Apr. 10, 2017, No. 2:12-cv-02499 JAM-CKD) 2017 U.S.Dist.LEXIS 55442; *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 270 ("Because rest periods are 10 minutes in length (Wage Order 4, subd. 12(A)), they impose practical limitations on an employee's movement."). Additionally, Defendant has already challenged class certification based on predominance for these claims.

For the claim that Defendant underpaid meal period premiums at the hourly rate of pay versus the regular rate of pay, there were risks that this claim would not be certified or fail based on the merits. Defendant has already argued predominance issues and manageability issues related to this claim, specifically:

> To prevail on this claim, each putative class member must be able to make two factual showings with regard to each meal period premium payment: (1) AT&T was required to pay the premium because it failed to provide a legally compliant meal period (rather than paying a meal period premium that was not legally owed); and (2) the employee's regular rate of pay for the workweek was greater than his or her hourly rate. [Dkt. 42 at 27:16-28:4]; [Dkt. 42 at 27:3-31:14].

Should this claim have been certified, there is still a matter of proof that a meal period premium was paid for a period of time that commissions, or other remuneration to be included in the regular rate of pay, were paid.

For Plaintiff's claims that Defendant underpaid overtime by paying overtime for commissions on a monthly basis rather than a weekly basis. That is, commissions earned in a month would then be used to back pay overtime for that month. Plaintiff claims that it should be calculated based on a weekly basis, pursuant to Labor Code §§510, 1194 and the Wage Order, and as such there would be an underpayment of

14

overtime for workweeks that fell into both months because the regular rate of pay would be higher for that workweek given the portion of the commission from both months. Plaintiff also claims that other bonuses were not included in the regular rate of pay. This resulted in a small damages exposure because there is a minimal change to the regular rate of pay. Defendant has already challenged that its regular rate and overtime payments were legal because the commission overtime payments were calculated based on a value that could be attributable to the time earned (i.e. the month), [Dkt. 42 at 12:5- 11]; and that the other alleged payments not included in the regular rate of pay were non-discretionary and thus were not required to be included in the regular rate of pay. [Dkt. 42 at 12:12-13:3]. Defendant further challenged that these claims do not raise common issues with common answers. [Dkt. 42 at 24:3-27:12].

There was an inherent risk in proceeding to trial with these class claims, thus this factor weighs strongly in favor of final approval. *See Judson v. Goldco Direct, LLC* (C.D. Cal. June 11, 2021) 2021 U.S.Dist.LEXIS 258173, at *11-12 (ruling that a defendant's opposition to the motion to certify class action posed a risk to maintaining the class through trial that favored final approval); *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *3 (N.D. Cal. June 22, 2015) (holding that "if the settlement is not approved, 'there is risk that the Court may deny class certification or, following initial certification, subsequently decertify the class based on unanticipated individualized issues or manageability concerns.'") (citation omitted).

### 5. The Amount Offered in Settlement Favors Final Approval

This factor favors final approval because the amount offered in Settlement is a significant value compared to Defendant's reasonable liability and damages exposure. "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Martinez,* 2021 U.S.Dist.LEXIS 260359, at *11; *citing Officers for Justice*, 688 F.2d at 624 (internal quotations omitted). "[T]he proposed settlement is not to be judged against a hypothetical or speculative measure of what

might have been achieved by negotiators." *Id.* Rather, the settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation. *Id.*

### a) Significant Value for Class Claims Achieved

Given the time period represented by the Covered Period, compared to the statute of limitations after the *Wallack* settlement, the Settlement represents significan value for the remaining class claims at-issue in this case. *See* [Dkt. 73-1 at ECF p. 24:24-28:15]. Thus, the $150,000.00 Class Settlement represents significant value for the narrowly tailored release of claims in this case.

### b) Significant Payments

The Settlement applies to approximately 489 individuals and, as a gauge, yields an "average" class member payment of ***$154.40*** (NSA $75,500.00 / Class Size – 489) for the limited 11 month and 9 day time period or 49 weeks (i.e. the Covered Period), subject to the *pro rata* calculation for Settlement Class Member's Class Member Payment. This is an excellent result based on the class size and claims at-issue in this Action after the *Wallack* settlement. [Dkt. 73-2 at ¶ 13]; (Decl. Hatcher at ¶¶ 18, 19, 20). It is estimated that approximately 63% of the Settlement Class (approx. 309 individuals) will receive class settlement payments ***in excess of $100.00*** for a very limited Covered Period.  And, it is estimated that there are 195 Settlement Class Members (approximately 40% of the Settlement Class) will receive the highest payment of $253.82.

### c) Non-collusive, Arm's Length Negotiations

This Settlement Agreement has been negotiated at arm's length after a highly contested litigation, after preliminary approval was granted for the *Wallack* settlement, and signed after the *Wallack* settlement was finally approved. [Dkt. 73-2 at ¶¶ 9-12]; *See* [Dkts. 28, 30, 40, 62, 74-3, Ex. C]. The conduct of the negotiations was appropriate to protect the Settlement Class Members' interests. [Dkt. 73-2 at ¶ 9].

In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth

16

circuit expressly opined that courts should defer to the "private consensual decision of the [settling] Parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. The primary reason for deferring to such settlements is the experience of counsel and the parties, which factors are present here:

> ...the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Id.* at 965, quoting *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982).

The *Rodriguez* court "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and has never prescribed a particular formula by which that outcome must be tested." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (citations omitted). The proposed settlement here is the product of arm's length negotiations.

The amount offered in Settlement for the class claims constitutes *significant value* for Defendant's potential exposure and the class Settlement allocations appropriately distribute funds consistent with the strengths and risks of the class claims in exchange for a narrowly tailored release of class claims in this case. [Dkt. 73-2 at ¶ 12-14]. Accordingly, this fact favors final approval. *See Martinez,* 2021 U.S.Dist.LEXIS 260359, at *11-13 (noting that while settlements will not make most class members completely whole, class members must discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation).

## 6. The Extent of Discovery Completed and Stage of Proceedings Favors Final Approval

This factor requires the Court to gauge whether Plaintiff had sufficient information to make an informed decision about the merits of her case. *Martinez,* 2021 U.S.Dist.LEXIS 260359, at *13. The more discovery that has been completed, the

17

1  more likely it is that the parties have "a clear view of the strengths and weaknesses of

2  their cases," and the more heavily this factor weighs in favor of final approval. *Id.;*

3  *citing Young v. Polo Retail, LLC*, No. C 02-4546 VRW, 2007 WL 951821, at *4 (N.D.

4  Cal. Mar. 28, 2007) (internal quotation marks omitted).

5      This factor favors final approval as Plaintiff Shaw and Class Counsel conducted

6  sufficient discovery and investigation to prepare for class certification and trial in this

7  action. This includes, but is not necessarily limited to, obtaining responses to two sets

8  of Request for Production of Documents; two sets of Interrogatories; conducting two

9  separate depositions of Defendant's Rule 30(b)(6) deponents; obtaining over a

10  thousand pages of documents from Defendant; and timekeeping and payroll records.

11  collaboration of Class Counsel and Plaintiff that the instant settlement was reached.

12  [Dkt. 73-2 at ¶ 10].

13      Accordingly, through this extensive discovery and motion practice in this

14  action, Class Counsel were well positioned to evaluate the strengths and

15  vulnerabilities of the claims and to engage in settlement discussions that eventually

16  led to this settlement. It is based on the substantial efforts, investigation, and

17  collaboration of Class Counsel and Plaintiff that the instant settlement was reached.

18  [Dkt. 73-2 at ¶¶ 9-16].

19      The record clearly demonstrates that Plaintiffs possessed sufficient information

20  to make an informed decision about the merits of the case and were on track to take

21  these claims to trial at the time of the mediation. Further, as shown supra, Plaintiffs

22  had a clear view of the strengths and weaknesses of the claims. This factor favors final

23  approval. *Martinez,* 2021 U.S.Dist.LEXIS 260359, at *13-14 (find this factor favored

24  approval based on less formal discovery and litigation).

### 7.    Experience and Views of Counsel favors Final Approval

26      Class Counsel is experienced in wage and hour class litigation and has

27  successfully litigated numerous class actions and complex cases. [Dkt. 73-2 at ¶¶ 2-7,

28  19]. The proposed settlement is fair, reasonable, and adequate given the known facts

18

and circumstances. [Dkt. 73-2 at ¶¶ 14, 16]. Class Counsel has vigorously and comprehensively investigated the class claims and litigated the class claims, since the case's initiation in August 2019. [Dkt. 73-2 ¶¶ 9-12]; [*See fully briefed motions at* Dkts. 28, 30, 40, 62]. Class Counsel relied on this extensive experience when negotiating the proposed settlement, and throughout the duration of the litigation. [Dkt. 73-2 at ¶¶ 8-16]. This factor favors approval.

### 8.    Presence of Government Participant Favors Final Approval

Here, Defendant is not a government participant, although given the weight of the other factors, there is still a significant balance that suggests that the settlement is fair, reasonable, and adequate.

### 9.    The Class Members' Reaction Favors Final Approval

Here, the Settlement Class <u>unanimously endorses</u> the Settlement. <u>No</u> Settlement Class Members have opted out or objected to the Settlement terms. (Decl. Bridley at ¶ 11). The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members. *Martinez,* 2021 U.S.Dist.LEXIS 260359, at *15-16*; citing Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement"). This is an excellent result in light of the costs, risks, and delays of proceeding to trial. Accordingly, this factor weighs strongly in favor of final approval. *Martinez,* 2021 U.S.Dist.LEXIS 260359, at *15-16.

Based on the foregoing, the Court should Grant final approval.

///
///
///
///
///
///

1 | **VI.**   **CONCLUSION**

2     Accordingly, Class Representative respectfully requests that the Court GRANT

3 final approval of the proposed settlement and enter the proposed Final Approval Order

4 submitted herewith, and for such additional relief as this Court should deem proper.

5

6 DATED: September 15, 2023      Respectfully submitted,

7                            **THE MYERS LAW GROUP, A.P.C.**

8

9                  By:   /s/Jason Hatcher

10                        David P. Myers,

                       Robert M. Kitson,

11                        Jason Hatcher,

12                        Attorneys for Plaintiff Shaw and all

                       others similarly situated

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28