UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATASHA AYALA, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>AT&T MOBILITY SERVICES, LLC, et al.,<br><br>　　　　　　Defendants. | Case No. 2:18-cv-08809-FLA (MRWx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [DKT. 82] AND MOTION FOR ATTORNEY'S FEES [DKT. 83]** |

1

# RULING

Before the court are Plaintiff Kellen Shaw's ("Plaintiff" or "Shaw") Motion for Final Approval of Class Action Settlement ("Motion for Final Approval," Dkt. 82), and Motion for Attorney's Fees, Representative Enhancement, and Cost Reimbursement ("Fees Motion," Dkt. 83). Defendant AT&T Mobility Services LLC ("Defendant" or "AT&T") does not oppose either Motion. These Motions came to hearing on March 15, 2024.

For the reasons stated herein, the court GRANTS Plaintiff's Motions and final approval of the parties' Class Action Settlement Agreement ("Settlement Agreement" or "Settlement," Dkt. 73-3).

# BACKGROUND

On August 22, 2018, former Plaintiff Natasha Ayala ("Ayala") filed a class action complaint against Defendant in the Los Angeles County Superior Court. Dkt. 1-2. Defendant removed the action to this court on October 15, 2018, pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Dkt. 1.

On June 3, 2019, Ayala filed a Renewed Motion for Class Certification. Dkt. 40. On September 25, 2019, the court denied the Renewed Motion for Class Certification with leave to amend to add a new class representative, after determining Ayala was not an adequate class representative and her claims were not typical of the putative class. Dkt. 51. On October 16, 2019, Plaintiff filed the operative Third Amended Complaint ("TAC"), naming Shaw as the proposed class representative pursuant to Fed. R. Civ. P. 23 ("Rule 23"). Dkt. 52.[1] The TAC asserts causes of action for, inter alia, violations of the California Labor Code and California Business and Professions Code § 17200, et seq. (the Unfair Competition Act, "UCL"). *Id.*

///

---

[1] On June 6, 2022, the court dismissed Ayala's individual claims with prejudice and Ayala's Private Attorneys General Act ("PAGA") cause of action without prejudice, pursuant to a stipulation by the parties. Dkts. 75, 76.

2

On November 2, 2021, preliminary approval of a class action settlement was granted in a related case pending in San Bernardino County Superior Court, Case No. CIVSB2217915 (the "*Wallack*" action).  Dkt. 73-1 at 11; Dkt. 74-4.  The *Wallack* settlement involved a larger settlement class that overlapped with and subsumed the putative class in this action for the period from August 1, 2015, to November 2, 2021. Dkt. 74-1 at 12–39.

On February 4, 2022, the parties submitted a Notice of Settlement regarding the claims at issue in this action, for the period preceding the *Wallack* settlement.  Dkt. 67.  On June 20, 2023, the court preliminarily approved the Settlement, certified the proposed class for settlement purposes, and approved the proposed Notice of Proposed Class Action Settlement and Final Approval Hearing (the "Notice").  Dkt. 81 ("Preliminary Approval Order").

The parties now move for final approval of the Settlement Agreement.  Dkt. 82. Plaintiff additionally requests the court approve attorney's fees of $50,000, litigation costs and expenses of $7,500, and a service award to Shaw of $5,000.  Dkt. 83 at 3.

## SETTLEMENT AGREEMENT TERMS

### I.   Settlement Class

The settlement class is defined as: "all current and former hourly[,] non-exempt employees who worked for AT&T Mobility Services LLC at any call center in the State of California at any time from August 22, 2014, to July 31, 2015, and received commission payments."  Settlement Agreement ¶ 2.

### II.  Payment Terms

In full settlement of the claims asserted in this lawsuit, Defendant agreed to pay a non-reversionary gross settlement amount of $150,000.  Settlement Agreement ¶ 29. The net settlement amount is $75,500, after attorney's fees, litigation costs, Plaintiff's service award, and settlement administration costs are subtracted from the gross settlement amount.  Dkt. 82 at 6.  Separately from and in addition to the gross settlement amount, Defendant also agreed to pay the employer's share of payroll taxes

arising from any portion of the Settlement attributable to wages. Settlement Agreement ¶ 29.

Bryn Bridley ("Bridley"), the Director of Project Management at Atticus Administration, LLC ("Atticus" or the "Settlement Administrator"), attests that 489 Notices were sent by mail, 23 of which were returned ultimately due to undeliverable addresses. Dkt. 88 ¶ 4. No opt-out request or objections have been received by Atticus as of the date of the hearing.

The participating class members will receive a pro rata share of the net settlement amount based on the number of weeks worked in each position covered by the Settlement, during the relevant time frame. Settlement Agreement ¶ 33. Estimated payments to class members range from $5.07 to $253.82, with an estimated average award of $154.40. Dkt. 82-2 (Bridley Decl.) ¶ 5. Twenty-five percent of each class member's payment will be allocated as W-2 wages subject to reduction for typical withholdings and taxes, and the remaining seventy-five percent will constitute payments for non-wage penalties, damages, and interest and reported to the IRS pursuant to Form 1099. Settlement Agreement ¶ 34.

### III. Attorney's Fees, Costs, and Service Awards

The Settlement Agreement authorizes class counsel to petition the court for payment from the gross settlement amount of $50,000 in attorney's fees (which is approximately equal to 33.33% of the gross settlement amount) and up to $7,500 in litigation expenses and costs. Settlement Agreement ¶ 30. The Settlement also allows Plaintiff to request approval of a service payment of $5,000 to Shaw. *Id.* ¶ 31.

### IV. Releases

The Settlement Agreement requires class members that do not opt-out timely to "fully release and discharge Defendant and the Released Parties of any and all known and unknown Covered Claims as alleged in, and that could have been reasonably alleged based on the facts of, the operative Third Amended Complaint, for the Covered Period [of August 22, 2014, to July 31, 2015]." *Id.* ¶ 37. In addition to the

other terms and conditions of the Settlement Agreement and in consideration of the service payment, Shaw releases "any and all of her known and unknown claims against Defendant and [the Released Parties], and waives the protection of California Civil Code section 1542." *Id.* ¶ 36.

## V.   Dismissal of Non-Covered Claims

The Non-Covered Claims alleged in this action, meaning claims after August 1, 2015, will be dismissed without prejudice. *Id.* ¶ 38.

## VI.   Notice to Settlement Class

On June 27, 2023, Defendant provided the Settlement Administrator with contact information for 490 individuals who are current or were former hourly non-exempt employees of AT&T at any call center in the State of California during the relevant period. Dkt. 82-2 ¶ 4. The final class list contained 489 class members after Ayala's removal. *Id.*

On July 13, 2023, Notice was mailed to the class members by U.S. first class mail. *Id.* ¶ 7. 49 of the mailed Notices were returned to the Settlement Administrator as undeliverable. *Id.* ¶ 8. The Settlement Administrator made a second attempt at notice after locating new addresses for 35 of the class members who did not receive notice initially. *Id.* According to Bridley, 466 class members were ultimately mailed the Notice successfully, and 23 undeliverable addresses remain. Dkt. 88 ¶ 4. On July 13, 2023, the Settlement Administrator also launched a settlement website and activated a toll-free telephone number as the toll-free settlement information line. *Id.* ¶ 5. As of November 20, 2023, the website has received 129 visits and the toll-free information line has received 24 calls for information. *Id.* ¶ 6.

## MOTION FOR FINAL APPROVAL OF SETTLEMENT

## I.   Class Certification

The court previously certified the proposed class conditionally for settlement purposes. Dkt. 81. Nothing has changed since the conditional certification, and there is no basis for the court to revisit its analysis and Preliminary Approval Order.

5

Accordingly, the court MAINTAINS its approval of the class for settlement purposes.

## II.  Notice

In assessing whether to grant final approval of a class action settlement, the court must determine whether proper notice has been given. Fed. R. Civ. P. 23(c)(2)(B). The court reviewed and approved the Notice in the Preliminary Approval Order. Dkt. 81 at 11–12. As stated, the parties present evidence 489 Notices were sent to class members by first class mail, of which 23 were returned as undeliverable. Dkt. 88 ¶ 4. The Settlement Administrator received no opt-out requests or objections. *Id.* ¶ 8. The parties state the substance of the notice packets and the dissemination process complied with the terms of the Settlement Agreement and the court's Order. Dkt. 82 at 7. Accordingly, the court affirms its prior approval and finds the Notice to be fair and adequate as to the 466 class members who received notice.

Defendant provided notice of the Settlement to relevant federal and state officials pursuant to 28 U.S.C. § 1715(b). Dkt. 90 ¶ 6. The final approval hearing was held more than 90 days after issuance of such notice, as required by 28 U.S.C. § 1715(d). Accordingly, the court finds the parties have substantially satisfied the notice requirements of CAFA. *See* 28 U.S.C. § 1715.

## III.  Fairness of Settlement Terms

Under Rule 23(e)(2), the court must find the proposed settlement fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

  (iv) any agreement required to be identified under Rule 23(e)(3); and

 (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

   The Ninth Circuit outlined additional factors the court may consider, which include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

   In the Preliminary Approval Order, the court found the Settlement Agreement to be fair, adequate, and reasonable. *See* Dkt. 81 at 8–11. Notice was subsequently delivered to more than 95% of the settlement class, and the Settlement Administrator received no objections or opt-out requests. Dkt. 88 ¶ 4. These statistics indicate a favorable reaction to the Settlement Agreement and support a finding that the Settlement is fair, adequate, and reasonable. *See Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed settlement are favorable to the class members."). As nothing has changed from the court's preliminary finding and given the lack of any opposition or opt-out requests to the Settlement, the court finds the Settlement is fair, adequate, and reasonable.

## IV. Conclusion

   Accordingly, the court GRANTS the Motion for Final Approval (Dkt. 82) and final approval of the Settlement, with respect to the 466 class members who

responded. The 23 individuals who did not receive notice shall be treated as if they had opted-out of the Settlement. The court further CONFIRMS Shaw as the Class Representative and The Myers Law Group, A.P.C. ("The Myers Law Group") as Class Counsel.

## **FEES MOTION**

The Settlement Agreement allows Class Counsel to seek attorney's fees of $50,000 (which is approximately equal to 33.33% of the gross settlement amount), reimbursement of litigation expenses and costs in an amount up to $7,500, and an incentive award for Shaw of $5,000. Settlement Agreement ¶¶ 30–31. Plaintiff filed the subject Fees Motion on September 15, 2023, requesting the court award attorney's fees, costs, and an incentive award in the maximum amounts allowed. Dkt. 83. The Fees Motion is unopposed.

### I.   Attorney's Fees

District courts have the discretion to choose between a lodestar method and percentage method to calculate reasonable attorney's fees in a class action. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). Courts may also choose one method and cross-check with the other. *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). For class action settlements, the Ninth Circuit has established 25% of the total recovery as a benchmark award for attorney's fees. *Id.* at 968. It is not unusual, however, for courts to award attorney's fees above this benchmark rate. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. … [T]he exact percentage varies depending on the facts of the case, and in most common fund cases, the award exceeds that benchmark.") (quotation marks omitted); *see In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("[I]n most recent cases the benchmark is closer to 30%").

///

In assessing the reasonableness of a fee award, courts may consider factors including: (1) "the extent to which class counsel achieved exceptional results for the class," (2) "whether the case was risky for class counsel, (3) "whether counsel's performance generated benefits beyond the cash settlement fund," (4) "the market rate for the particular field of law (in some circumstances)," (5) "the burdens class counsel experienced while litigating the case (e.g., cost, duration, [forgoing] other work," and (6) "whether the case was handled on a contingency basis." *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 954–55 (9th Cir. 2015); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

Considering these factors and the lack of objections to the Settlement, the court finds the requested attorney's fee award is reasonable. This determination is supported by a lodestar cross-check of the fee award, as The Myers Law Group presents evidence its attorneys spent over 390 hours in connection with this action, for a lodestar amount that greatly exceeds $50,000. Dkt. 82-3 (Hatch Decl.) ¶¶ 12; Dkt. 82-4 (Ex. A). Accordingly, the court APPROVES Plaintiff's request for payment of $50,000 in attorney's fees from the gross settlement amount.

## II. Litigation Expenses and Costs

Class Counsel is also entitled to reimbursement of "nontaxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h). The Settlement Agreement authorizes Class Counsel to recover litigation expenses and costs in an amount up to $7,500. Settlement Agreement ¶ 30. Class Counsel presents evidence it incurred $10,525.76 in litigation expenses and costs, largely due to filing fees and deposition transcript fees. *Id.* Based on the submitted evidence and lack of any objection to the Settlement, the court APPROVES Plaintiff's request for payment of $7,500 in litigation and expenses and costs to The Myers Law Group from the gross settlement amount.

/ / /

/ / /

### III. Incentive Awards

Incentive awards are common in class action cases. *Rodriguez*, 563 F.3d at 958. "Such awards are discretionary, and are intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action[.]" *Id.* (internal citation omitted). The parties negotiated an incentive award of $5,000 for Shaw, for her assistance in the litigation including by providing Class Counsel with information and copies of her employment records, meeting with Class Counsel regarding Defendant's policies and practices, and participating in settlement negotiations. Dkt. 83 at 16–17; Dkt. 82-1 (Shaw Decl.) ¶ 4. Shaw also notes she is releasing more claims than other class members under the terms of the Settlement, given that she has agreed to a general release of all known and unknown claims against the Releasing Parties. Dkt. 83 at 17.

The court finds Shaw's requested incentive award of $5,000 is reasonable considering the time spent and risks in bringing and participating in the litigation. Further, the award is consistent with reasonable and just service awards in the Ninth Circuit. *See Fulford v. Logitech, Inc.*, Case No. 3:08-cv-02041-MMC, 2010 WL 807448, at *3 n. 1 (N.D. Cal. Mar. 5, 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000).

### IV. Conclusion on Fee Motion

In sum, the court GRANTS the Fee Motion in its entirety and APPROVES Plaintiff's request for payment from the gross settlement amount of: (1) $50,000 in attorney's fees to The Myers Law Group; (2) $7,500 in litigation expenses and costs to The Myers Law Group; and (3) a $5,000 incentive award to Plaintiff Shaw.

### CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. 82) and APPROVES the Settlement, except with respect to the 23 individuals who did not receive notice, who shall be treated as if they had opted-out of the Settlement. The court additionally APPROVES

Plaintiff Kellen Shaw as the Class Representative, and The Myers Law Group, A.P.C. as Class Counsel, and Atticus Administration, LLC as the Settlement Administrator. All participating Class Members shall be bound by the terms and conditions of the Settlement Agreement (Dkt. 73-3) and all related Orders issued by the court. The Released Parties are released and discharged from any and all liability with respect to the Class Members' released claims, as stated in Paragraph 37 of the Settlement Agreement. The court APPROVES the parties' request for, and payment of $12,000 to the Settlement Administrator from the gross settlement amount for its services as Settlement Administrator.

The court GRANTS Plaintiff's Fees Motion (Dkt. 83) and APPROVES payment from the gross settlement fund of $50,000 in attorney's fees and $7,500 in litigation expenses and costs to The Myers Law Group, a $5,000 incentive award to Plaintiff Shaw, and $12,000 to Atticus Administration, LLC for its services as the Settlement Administrator.

IT IS SO ORDERED.

Dated: March 18, 2024

FERNANDO L. AENLLE-ROCHA
United States District Judge